DeGrilleau et al. vs. Frawley et al.

No. 11,829.

MRS. A. DEGRILLEAU ET AL. VS. JOHN J. FRAWLEY ET AL.

A vendor in selling different portions of his property to others, may impress upon it by private contract, rights analogous to the public rights of highway, and yet those rights confined to the owners and representatives of the land forming the subject of the compact. The mere fact that an alley opens upon a public street does not make it a public alley.

A plain and positive intention to dedicate to public use is an essential element of a dedication, and that intention must be shown by acts or language so clear as to exclude any other reasonable hypothesis, or at least to clearly convince the judicial mind. C. C., Art. 753; 37 An. 235; 41 An. 867.

A private way with no portion lying upon a public street, and a mere appurtenance of the lots abutting upon it, does not fall under the operation of Sec. 37 of Act No. 20 of 1882, relative to paving.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Carroll & Carroll* for Plaintiffs, Appellees.

*Carleton Hunt* for Miss Louisa Egan, Intervenor, Appellee.

*E. A. O'Sullivan*, City Attorney, for the City of New Orleans, Defendant, Appellant:

Where there is no privity there can be no joinder of parties.  14 An. .177; 15 An. 503; 29 An. 105; 30 An. 606.

Streets are divided into public and private.  What is a private street or road?  C. C., Art. 706.  What is a public street or road?  C. C., Art. 705.

No form is necessary to dedicate property to the public use.  Any act or plan, or plat, made by the original owner, is sufficient to prove dedication.  14 La. 172; 3 An. 282; 9 An. 597; 34 An. 1093; 37 An. 502; 45 An. 1405.

The city of New Orleans has power to make, repair, and build streets and alleys.  Act No. 20 of 1882; 45 An. 1405.

Argued and submitted December 4, 1895.
Opinion handed down January 20, 1896.

STATEMENT OF THE CASE.

Mrs. Alice Grailhe, wife of Albin DeGrilleau, Robert A. Grailhe, Charles T. Grailhe and Mrs. Adele Beer, widow of Abraham Beer, claim to be joint owners of two lots fronting on Canal street, in city of New Orleans, and that their respective properties all extend in the rear to an alley twelve feet wide, running from Baronne street through to Dryades, which alley is an alley common to all the lots on the said square bordering upon the same, with the right of the owners of said lots to use the same, and that for more than thirty years the alley has had a gutter or drain on each side thereof, one of the gutters or drains being on and along the north side of the same, and the other on and along the south side thereof from Baronne to Dryades street, there being space between the gutters for the business carried on in the alley; that all or nearly all of the property on the south side of the alley belonged to Louis Grunewald, and that most, if not all, of the improvements on the south side of the same form a part of the Grunewald Hotel and the buildings connected therewith; that the liquid refuse and drainage from the hotel should under no conditions or circumstances be allowed to flow into or through the gutter on the north side of the alley running along petitioners' property.

They allege that one John J. Frawley is now actively, wrongfully and unlawfully interfering with and changing and altering the said alley, and the arrangement and conformation of the same, and of its drains and gutters; that he is closing and destroying the drain on the side nearest to the Grunewald Hotel, and is arranging to place pipes and other conducts, whereby all the drainage and liquid refuse from the said hotel, and from the south side of the alley, will be thrown and carried into the gutter on the north side, being the gutter running alongside of the properties of petitioners.

They aver that Frawley claims to be acting and working under a contract made by him with the city of New Orleans, but they aver that no legal contract has been or can be made whereby Frawley can lawfully make such alterations and changes as have been commenced and are now being carried on by him; that the alley is a common alley for private use only; that it is not a public street or sidewalk, and that the pretended contract which Frawley claims to have made with the city of New Orleans is null and void.

Petitioners pray for damages and that a writ of injunction issue,

enjoining the city of New Orleans and Frawley, and each of them from taking any further steps under the alleged contract claimed to have been made between them with reference to grading and paving said common alley, and enjoining them and each of them from making any further changes and alterations in said alley, and for the drainage thereof in pursuance of said contract, and from allowing the changes already made to continue and remain, and from allowing any of the waters or drainage from said Grunewald Hotel, and from the south side of said alley, to flow or pass into the gutter on the north side of said alley, and from closing the drain or gutter on the south side of said common alley.

An injunction issued.

A motion was made by the city of New Orleans to bond the injunction, suggesting that plaintiffs had not alleged irreparable injury as resulting from the acts set forth in the petition, and that no irreparable injury could result by defendant's action, and it joined the defendant Frawley in excepting to the demand excepted to on the ground that there was a misjoinder of parties. The court overruled the exception of misjoinder and referred the motion to bond to be disposed of on trial of the merits.

Before the case went to trial, Miss Mary Louisa Egan intervened in the case, joining the plaintiffs in their demands. Her intervention was grounded upon the claim that she was the owner of lot No. 2, in the same square of ground as the lots of the other plaintiffs. She substantially adopted plaintiffs' allegations and prayer for judgment.

The city of New Orleans, defendant, in answer, denied that the alley was a common alley-way for the sole use and enjoyment of the petitioners fronting on the same, but averred that the same was a public street, recognized as such, over which the city of New Orleans, by the powers conferred upon it by Act No. 22 of 1882, had full power and control, and that plaintiffs themselves recognized the power of said city over said alley-way by a petition duly signed by A. & C. Denis, agents, for and on behalf of plaintiffs in this cause, as would fully appear by petition annexed to and made part of the city's answer. That for over forty years the right of the city had been recognized and exercised over said alley; that plaintiffs had no title to the alley-way, but only to the use thereof, the alley forming the boundaries to the respective prop-

erties.   The city denied the right of plaintiffs to interfere with it in the administration of its police powers over the streets.

Frawley, denying all liability, relied upon the contract entered into between himself and the city.

The District Court rendered judgment perpetuating the injunction, reserving to Frawley whatever right of action he might have against the plaintiffs and intervenor for damages caused by their interference with the contract in controversy.

The city of New Orleans appealed.

Plaintiffs answered the appeal, praying that the judgment, in so far as it reserved to the defendant Frawley any right of action for damages, be amended so that said reservation be stricken out and eliminated; that the judgment be also amended so as to declare and decree null and void and of no effect the alleged contract between the city of New Orleans and Frawley and so as to award damages to plaintiffs as prayed for in their petition.

### STATEMENT OF FACTS.

The General Assembly in 1850, by the first section of Act No. 170 of that year, authorized and directed the Governor of Louisiana to transfer and deliver to the New Orleans Mechanics' Society the possession and occupancy forever of a certain portion of ground in the square bounded by Canal, Baronne, Common and Phillipa (now Dryades), in the city of New Orleans, the said portion of ground having seventy feet on Phillipa street, to be measured from the line of the ground occupied by the University of Louisiana in the direction of Canal street, by a hundred and fifty feet in depth between parallel lines.   By the second section of the act it authorized the Governor to cause to be laid out in proper form the remainder of the square in lots and then sold to the highest bidder, provided the remainder of the square pay the debt and interest due on said property; said property to be sold, payable at such period as would meet the bonds of the State issued for the purchase of said property.

Acting under the authority so granted, the pr )perty mentioned in the second section was divided, under direction of the Governor, into twenty-six lots, laid out in proper form, according to a certain plan, and were sold at public auction.

The record contains an admission of parties to the following effect:

"It is admitted that when the State of Louisiana sold a portion of the square aforesaid, it divided the part so sold, making lots which fronted on Canal street, making an alley running along the rear of those lots so fronting on Canal street, making other lots which fronted on the said alley, and still other lots which fronted on Baronne and Phillipa streets, as shown upon the sketch " A," and the measurements of those lots are all as shown in the red ink upon the said sketch " A."  The lots upon Canal street all being in depth 120 to 121 feet 3 inches and the alley being 12 feet wide."

On the sketch referred to, twelve of the lots, designated by the numbers one to twelve, both inclusive, front on Canal street, lot No. 1 being at the corner of Canal and Phillipa, lot No. 12 being at the corner of Canal and Baronne streets, and the other lots, from one to twelve, adjoining each other and being numbered consecutively from Phillipa to Baronne street.  Lot No. 13 was the upper corner lot at the intersection of the alley and Phillipa street.  Lot No. 19 was the upper corner lot, at the intersection of the alley and Baronne street.

Five of the lots, designated by the numbers 14, 15, 16, 17 and 18, front on the alley alluded to; five of the lots, designated by the numbers 19, 20, 21, 22 and 23, front on Baronne street (No. 19 being at the intersection of the alley and Baronne street), and four, designated by the numbers 13, 24, 25 and 26, front on Phillipa street (No. 13 being at the intersection of the alley and Phillipa street).

The plaintiffs, Alice Grailhe, wife of Albin DeGrilleau, Robert A. Grailhe and Charles T. Grailhe, are owners of lots Nos. 9 and 10 on that sketch.  Mrs. Adele Beer, one of the plaintiffs, is the owner of lots Nos. 11 and 12, and Miss Louise Egan, the intervenor, the owner of lot No. 2.  Levy is the owner of lot No. 1.  They derive title from the State of Louisiana under and through the purchases made of the property at the auction made in 1850 under Act 270 aforementioned.

It is admitted that in the acts of sale of the lots on Canal street * * *  to the original purchasers, the measurements in the rear of the lots are given as "so many feet and inches in the rear on alley twelve feet wide, extending from Baronne to Phillipa street, together with the use in common with the other lots on the said alley, and all rights and privileges thereunto belonging."  That in the deed of lot No. 13 the lot is declared to "measure 39 feet 6 inches and 2

lines depth and front on an alley twelve feet wide, extending from Baronne to Phillipa street," the act declaring that "said lot is in common with others entitled to the aforesaid alley and to all rights and privileges thereunto belonging; also, that 'in the deed to lot No. 19 the lot is said "to measure 135 feet in depth and front on an alley twelve feet wide," the act declaring that "the said lot, in common with the others, is entitled to the use of the alley, twelve feet wide, extending from Baronne to Phillipa street, and the rights and privileges thereunto belonging; also, that in none of the acts covering lots Nos. 20 to 26, inclusive, was there any reference whatever to the alley in question." Lots Nos. 15, 16, 17, 18 and 19 now form part of the Grunewald Hotel property. Subsequent to the sale of the lots upon the alley by the State the parties owning property abutting upon the same paved it at their own expense—first with cobble stone, and afterward with square blocks, placing two gutters about a foot in width on each side of the alley, extending the full length, from Baronne to Phillipa street. Doors were made in the rear walls so as to communicate with the alley and holes made also in the walls for drainage purp)ses. The properties fronting on Canal street were mostly used as stores, and the merchandise for the same was almost entirely received into the stores from the rear through the alley. Matters remained in that situation until recently, when a large house, known as the Grunewald Hotel, was erected upon the lots mentioned. This building is so built and so used as to greatly increase the drainage into the alley coming from the southern or up-town side of the same.

Some time in the spring of 1894, Charles E. Levy, the owner of lot No. 1 (the lot at the corner of Canal and Phillipa streets, and running back to the alley), presented to the Common Council, a petition signed solely by himself, but evidently intended originally to have been signed by others, in which the following language was used:

" We, the undersigned property owners, owning property fronting the alley, extending from Baronne to Dryades street (Phillipa) in the square bounded by Canal, Dryades, Tulane Avenue (Common street) and Baronne street, do hereby petition your honorable body to have laid on said alley, a vitrified brick pavement on a base or concrete six inches thick, all in accordance with Sec. 37 of the City Charter, and according to plans and specifications to be prepared by the City Engineer."

The following letter, evidently of a date later than the foregoing petition, was forwarded to the Common Council by Messrs. Grunewald, A. & C. Denis, agents, and Chas. E. Levy:

"GENTLEMEN—In relation to the paving with vitrified brick the alley, extending from Baronne to Dryades street, in the square bounded by Canal, Dryades, Baronne and Tulane avenue, we, the undersigned property owners, request of your honorable body that you pass the necessary resolutions instructing the City Engineer in preparing specifications for this work to specify that the brick used shall be of the quality known as the Harris paver.

" Respectfully,

(Original signed) —

| Names. | Address. | No. feet. |
|---|---|---|
| Louis Grunewald | 14 to 20 Baronne street | 200 |
| Pp. DeGrilleau and Grailhe | | |
| A. & C. Denis, Agents | 164 and 166 Canal street | 48 |
| Charles E. Levy | 182 Canal street | 38 |

On the 19th March, 1894, the Common Council adopted *Ordinance No. 8852* to the following effect:

"*Resolved,* That the Comptroller be and he is hereby directed to advertise in the official journal for a period of eight weeks petition of property holders for the paving of Lafayette street from St. Charles to Rampart streets with vitrified brick, and petition of property holders to have vitrified brick pavement laid on alley from Baronne to Dryades street.

On the 13th July the Comptroller advertised this petition, accompanying the petition, as we understand, with the statement that if at the expiration of the publication a majority of the owners of real property fronting on said alley shall be memorialized by memorialists, addressed to the City Council, the work as prayed for would be ordered and proposals invited for the contract as provided.

On the 26th of October, 1894, the Common Council, by Ordinance 9872, directed the Comptroller to advertise for ten days for sealed proposals for the laying of the vitrified brick pavement in the alley extending from Baronne to Dryades streets, in the square above mentioned.

In the record prepared as of date October 26, 1894, by the City Engineer, are what are headed as " Specifications for the paving of the alley extending from Baronne street to Dryades street, in the square bounded by Canal street and Tulane avenue, with vitrified brick."

Among other matters, are the following specifications: " A gutter twelve inches wide will extend the whole length of the alley on the lower side and to be connected with the gutter on Baronne an l Dryades streets, in such manner as may be directed. This connection may be made with a proper size pipe by a brick culvert covered with iron. This culvert will be formed by setting a counter curb on the upper side of the gutter, which counter curb will be of North river blue stone not less than three and one-half inches thick and of sufficient depth to extend six inches below the top of gutter bottom. This curbing to be set to lines and levels to be given by the City Engineer.

" The down-town side of the gutter will be formed by pargeting the sides of the foundations of the buildings to the height of the counter curb. The bottom of the gutter will be formed by first thoroughly solidifying the earth on the bottom and placing thereon five inches of concrete, on top of which will be placed a top finish one-half inch thick, thoroughly smoothed and polished, and the whole work to be done to lines and levels to be given by the City Engineer, and in such manner as to best discharge the water into the gutter. In the construction of this gutter, the necessary openings will be made to drain the properties of the lower side, and pipes will extend across under the brick pavement to connect the drain with the properties on the upper side of the alley. All these openings and pipes discharging into this main gutter to be properly laid, and where they connect with the gutter to be made smooth and even."

The defendant Frawley bid upon the work under these specifications. His bid was accepted, and a contract made with him. The work had, under the supervision of the City Engineer, gone well on toward completion, when it was stopped by the injunction sued out in this case.

----

The opinion of the court was delivered by

NICHOLLS, C. J. The first question which presents itself is as to the character of the alley. The city contends it is a public alley, the plaintiffs that it is merely a private way.

At the time of the sales, in 1850, the square in which the lots sold were situated was surrounded on its four sides by public streets,

with gutters running along the same, as part of the general drainage of the city.

The object of the State, as declared in the Act No. 270, was not to dedicate any portion of the property to the public, but to sell the same. No authority was conferred upon the Governor other than to sell, and the General Assembly attempted to lay no restriction upon the executive as to the size of the lots to be sold, or their form. The Governor, had he thought proper, could, by making a subdivision other than he did, widening some of the lots, lengthenin: others, and striking out entirely some of the lots as they exist, have done away with the alley without possible complaint from any quarter.

There was nothing in the situation of the properties calling for any action on behalf of the public; the general drainage and rights of way had already been provided for, as we have said. The public was not a party to the acts of sale, either expressly or by implication. There was nothing in the acts of sale evidencing any intention to create a stipulation in favor of the public. We are not obliged to look for the particular reason which induced the Governor to lay out the lots in the manner he did, to leave open this alley, and to make it common to the owners of all the lots abutting upon it, for Art. 2013, C. C., says: that "the real obligation, created by condition, annexed to the alienation of real property, is susceptible of all the modifications that the will of the parties can suggest, except such as are forbidden by law;" but there are several reasons which would at once suggest themselves as being those which gave rise to the sales as made—reasons entirely disconnected from public considerations and confined to the private interests of the parties.

We are not authorized to broaden the scope of contracts beyond their terms, and make them carry with them effects not contemplated by the parties thereto. There is no reason why the clauses of the various acts of sale made by the Governor in 1850 should not be restricted to the persons immediately concerned in the purchases then made.

We are of opinion, from the language used in the deeds and their evident purpose, that only private rights *inter partes* were intended to be created and recognized. The vendor did not, in terms, convey the property of the alley to his different vendees, but for all practical purposes they had qualified property rights in it (Heirs of Delogny vs. Mercer, 43 An. 212), but rights in which no one other

than themselves were concerned. We know of no reasons why immediately after the sales here made, these parties could not have all met together, and by unanimous consent and arrangements entirely done away with the alley, nor any reason why, by common consent, they could not have closed the entrance to and exit from the alley by gates. If they did not do the latter, it was, doubtless, because of the inconveniences attendant upon opening and shutting them.

In Stevens vs. Nichols (Mass.) 29 N. E. 1151, the court said: " The defendants merely opened a private way into a public street, and we fail to see that they thereby invited the public to use it even though it were paved. They had a right to pave it for their own use, o" for the use of their customers (citing a number of authorities). They were not obliged to put up a sign, notifying travelers, or the public, that the passage-way was not a public street."

In Lake Shore & M. S. Ry. Co. vs. City of Cleveland (Com. Pl.), 1 Ohio, N. P. 1, it was said: " Where, in partition proceedings, a right of way to owners of the land allotted along the streets is marked on the maps attached, the right of way is limited to the owners, and did not constitute a dedication to the public, though the public have used, and city ordinances have been passed in reference to them, and the streets have been described in conveyances of the land recorded for years."

In Child vs. Chappell, 9 N. Y. 246, Morse, J., said: " Where an owner of land lays it out in lots and streets upon a map, by which he sells and conveys lots so laid out, as between him and the purchasers of such lots the spaces so laid down upon the map are dedicated to public use; this, we understand to be the law, and in conformity to principles of natural justice. The mere act of selling by such a map binds the grantor to permit the land so laid down as streets, to be used as such. As between the parties, their heirs and assigns, it fixes the servitude of a public way upon the land thus laid down as streets. It is, perhaps, unnecessary to consider now whether such a grant between the grantor and the public would be a dedication. * * * The transaction, however, in the first instance, is strictly a private one, as it relates to the land. The right to use and have used by the public, the streets laid down upon the map, has become an appurtenance to the parcel of land granted, and the same right belongs to each of the parcels granted, upon the same terms.

13

As between the original owner of the land and the several grantees of parcels thereof, these rights are fixed, but until the public has, in some way, become a party to the transaction, the whole arrangement is subject to be rescinded by the joint act of the original owner, and of all those who own and have the right to represent the land sold. The principle established is that an owner may make any lawful disposition of it which he deems most beneficial. He may found a city or village, or an agricultural or manufacturing community at his own free will, so far as the appropriation of his land may go to effect such purposes. He may adopt just such measures concerning his land as may, to his judgment, seem expedient. It would nowhere be doubted that a man owning a hundred acres of land through which there ran no highway would be at liberty to enclose it with a wall and to erect a fenced town. He might lay out streets throughout the entire parcel, and collect a phalanx of socialists having all the streets common and as among themselves public, and as to the world, besides, exclusive and private. In other words there might be impressed upon this mass of private property, private contract, rights in the strictest sense of the word analogous to the ordinary public rights of highway, and yet those rights confined to the owners and representatives of the land, forming the subject of the compact and liable to be ended by the mutual consent of all who had an interest in the subject."

In Dill vs. Board, 20 Atlantic Rep. 743, the court, referring to a sale of lots by a plan or map on which a street is marked, said: "By such purchases the grantees are regarded as purchasers by implied covenant of the right to the use of the street as a means of passage to and from the premises appurtenant to the premises granted, and this private right of way in the grantees is wholly distinct and independent of the right of passage to be acquired by the public. The right to have the alley thus described forever preserved is a private right annexed as an appurtenance to the ownership of the land conveyed, entirely distinct from and in addition to the right of the owner as a citizen at large to use the street after it should become a public street by acceptance of the public authorities * * * The right was granted in connection with the conveyance of the lot, and for the convenience of the owner thereof, and the grant was to him, his heirs and assigns forever."

We think that in the present case there was no intention to dedi-

cate the alley to the public. The evidence showed that no one enters it unless he is obliged to, and that its use is confined to those who have business with the owners. "A plain and positive intention to dedicate is an essential element of a dedication, and that intention must be shown by language or acts so clear as to exclude any other reasonable hypothesis, or, at least, to clearly convince the judicial mind " (C. C. 753; City of Shreveport vs. Drouin, 41 An. 867; Railroad Co. vs. Carrollton, 3 An. 285; Torres vs. Falgoust, 37 An. 497) · The city has never attempted to light the alley, has never placed a policeman upon it, or done any public municipal act whatever in reference to it, with the exception of the work now enjoined from being done. We do not think that the city occupied such a position relative to the alley, that had a personal injury to any one taken place therein in consequence of its bad condition and want of repairs, the corporation could have been made responsible for the resulting damages. The party injured, if entitled to damages, would have had to look to the parties charged with the duty of keeping it in repair. Stevens vs. Nichols, 29 N. E. 1150 (Mass).

· The alley in question does not border upon a public street (State vs. Lochte, 45 An. 1409; Holmes vs. Drew, 151 Mass. 578), but is in its entirety private.

The only claim urged by the city in support of its claim that the alley involved in this case is a public alley, not a private way, is that upon several occasions sanitary inspectors (officials under the Board of Health) have gone into the alley and cleaned it out with the assistance of the prisoners in the city jail. The officials in question acted upon their own responsibility, with orders from no official quarter, and though there might be no objection to be taken that in the interest of public health they should have done so on special occasions, instead of forcing (as they could have forced) the parties in interest to have done so, such an act when done would not carry with it the far-reaching consequences claimed.

The city was not bound itself, as a part of its official duty, either to clean this alley or repair it. It or the Board of Health could have forced the parties in interest to have kept it in a cleanly condition, for the powers of the proper sanitary officials extend for some purposes to and within the private enclosed premises of owners, and also to that portion of the property which the owner thinks proper to leave outside of his enclosure. The Council could by ordinance

force each owner to keep the portion of the alley directly in the rear or in front of his premises clean and to remove therefrom dirt or filth upon it.    See Commonwealth vs. Cutter, 29 N. E. 114 (Mass.)

The alley being held to be a private alley, in its entirety, and not bordering on any public street (Holmes vs. Drew, above cited), the next question is whether the council had the right through a contract made by itself to force the owners of the property abutting on it, at their own expense, to pave it, either acting on its own motion, or upon the application of one or more of those owners.    The right to do so is based upon Sec. 37 of Act No. 20 of 1882, which declares that the "council may, in its discretion, provide for the paving or banquetting of any street or portion thereof at the expense of the whole city, and may thereupon force and impose and collect of the front proprietors of lots fronting on such streets a specific local assessment in proportion to the frontage, not exceeding the increase in the value of the property, occasioned by the local improvement, and such local assessment shall have a first privilege superior to vendor's privilege and all other privileges and mortgages."

We do not think this alley falls under the operation of the statute as being a "street or a portion thereof."    Face vs. The City of Ionia (Mich.), 51 N. W. 186.    It is not a public place, but in its entirety a mere private way, appurtenant to the lots abutting on the alley.    Buisson vs. McNeil, 9 An. 445; Rozier vs. Maginnis, 12 An. 109; Gottschalk vs. DeSantos, 12 An. 473; Cahill vs. Connelly, 14 An. 280; Thompson vs. Meyers, 34 An. 618.

The city claims that the plaintifis, DeGrilleau, however, are estopped and concluded by the action of their agents, Messrs. A. & C. Denis, in signing the application for the paving of the alley with vitrified brick, but it is obvious that even were those parties concluded their action would bind neither the plaintiff, Mrs. Adele Beer, or the intervenor, Miss Egan.    Mrs. DeGrilleau and the Messrs. Grailhe could, by nothing they did, estop those abutting owners, and their opposition, when made, would, by reason of the fact that it would have as its effect to undo in its entirety, as being an indivisible act, all that had been done in the premises, indirectly of necessity enure to the benfit of all the owners.

The opposition made by the plaintiff and the intervenor, we may say, was not leveled so much against the paving of the alley as against the acts done by the city officials in connection with the paving.

Plaintiffs maintain that even were the city authorized to act as the forced legal agent of all the owners of property abutting upon the alley in bring.ng about a paving thereof, they were without authority in doing so, to disturb and break up of its own motion the private rights of the abutting owners, *inter se* as to drainage and other servitudes; that these rights are vested rights, and the Common Council, under the guise of police administration, is powerless to impair them. They show that these private rights have, as between the parties, been fixed and settled for years; that none of the parties have asked for any change in respect to them; that the city does not predicate its action upon any right of grading the property or of forcing the owners to do so, but that the City Engineer, under an application to have an alley paved, has undertaken to alter the grade of the property, and in altering it increase, to the prejudice of the properties on the lower side of the alley, in favor of those on the upper side, the servitudes upon the same. That he has also greatly interfered with the alley, considered as a right of way, making the alley in its changed condition inconvenient and liable to lead to accidents, and impairing the value of their properties.

Without entering into details of testimony, we think the complaints of plaintiff and intervenor on this branch of the case well founded.

We think the City Engineer in proceeding to have the alley paved was disturbing and breaking up, without authority and in an unjustifiable manner, the private rights of the owners, whose lots fronted on Canal street and abutted in the rear upon the alley. These rights are in the nature of property, and can not be thus taken from one person and transferred over to another. The alley is not a public alley, and neither the general drainage of the city nor public rights are involved in this litigation. The amendment asked for by appellants can not be granted. Frawley's rights would be affected, and he is not an appellant. The legal consequences of our decree will be sufficient protection to appellees as against the city.

The judgment appealed from is hereby affirmed.