### No. 3329
### Second Circuit

## TOWN OF PINEVILLE v. BALL

(January 21, 1929. Opinion and Decree.)
(March 12, 1929. Rehearing Refused.)

Lamare Polk, of Alexandria, attorney for plaintiff, appellant.

Overton and Hunter, of Alexandria, attorneys for defendant, appellee.

ODOM, J. This is a suit by the Town of Pineville against Mrs. Catherine Ball to collect $422.63, the cost of laying a sidewalk in front of her property along the edge of what is designated by the town as Ball Street. The sidewalk was laid under Act 147 of 1902, as finally amended by Act 16 of 1922.

Mrs. Ball resists the action on the ground that the so-called "Ball Street" is not in fact a public street, but a private lane owned by her, and that the town authorities in having the sidewalk laid trespassed upon her private property over her protest. The lower court rejected plaintiff's demands and it has appealed.

## OPINION.

The only question presented for our consideration and decision is whether the so-called Ball Street in the town of Pineville is in fact a public street owned by the town, and over which it has jurisdiction to the extent that it may lay sidewalks along its edges and compel the abutting property owners to pay the costs, under Act 147 of 1902 as amended.

If it is a public street, Mrs. Ball must pay the assessment charged against her; if it is not, it is conceded that the town cannot recover the amount claimed.

The only three ways by which a municipal corporation may acquire private property for public streets are by expropriation, purchase or dedication. Admittedly, the town did not acquire this street by either expropriation or purchase. But, it is con-

tended that it was acquired by dedication. Whether it was or not depends upon the facts and circumstances surrounding the case as shown by the testimony adduced on the trial.

That a municipal corporation may acquire property for use as a public street by dedication and that no formal act of dedication is necessary to complete title, is settled beyond question.

Where a property owner, without protest or objection, permits a passageway over his property to be used by the public as a street, and, without protest or objection, permits a municipal corporation in the exercise of its corporate capacity to possess and assume dominion and ownership thereof for and on behalf of the public, and with public funds lay out, grade and maintain it as a public street to the knowledge of the landowner, he will be presumed to have intended to dedicate the property to the municipality for use of the public and will not be heard to say that it is not a public street. The intent to dedicate to public use is one of fact and may be inferred from circumstances.

Donaldson's Heirs vs. City of New Orleans, 166 La. Rep. 1059, 118 So. 134;

Sheen vs. Stothart et al., 29 La. Ann. So. 656;

De Grilleau et al. vs. Frawley et al., 48 La. Ann. 194, 19 So. 151;

Shreveport vs. Drouin, 41 La. Ann. 872, 6 So. 671;

Bomar vs. City of Baton Rouge, 162 La. Rep. 342, 110 So. 497;

City of New Orleans vs. Carrollton Land Co., 131 La. Rep. 1092, 60 So. 695;

13 Cyc. 437;

13 R. C. L., p. 34.

But, "a plain and positive intention to dedicate is an essential element of dedication." De Grilleau vs. Frawley and Bomar vs. City of Baton Rouge, supra.

We have searched this record in vain for testimony showing, either that the town of Pineville ever intended to acquire, or that Mrs. Ball or her author in title intended to dedicate this passageway for public purposes. On the contrary, the testimony points conclusively the other way.

Mrs. Ball acquired the property over which this passageway runs from her father, John Milhas, in 1895. Milhas had then owned and occupied it for many years. He was a butcher and conducted a slaughter pen nearby. To afford access to the slaughter pen from the Main Street, and for his exclusive use, he opened a 16-foot alley along the edge of the property, and for many years closed the ends of the alley by wooden bars. Some thirty, or more, years ago, the bars and the posts decayed and fell down, after which the alley was used, by sufferance of the owner, by the public as a passageway. For many years, it was called "Milhas Lane," and later, up to about 1926, it was called "Ball Lane." Mrs. Ball built six houses on her property, and the occupants and others living farther down the lane, used it for a passageway to Main Street. During all these years, it was at times practically impassable and when work was done to keep it up, such work was done by Mrs. Ball's husband. However, at one time, several years ago, there was raised by private subscription $100.00, which was used to work it. In the year 1925, A. M. Herndon, who owns property farther down on this lane and who was interested in widening it and having it improved, induced the town of Pineville to purchase a strip of land ten feet wide on the opposite side of the lane from

Mrs. Ball's property, so as to widen the lane or street, as it was later called. Herndon then went to Mrs. Ball, and other property owners, soliciting donations to purchase gravel to be used in improving it. Mrs. Ball, thinking that the graveling of the lane or street would enhance the value of her property, contributed $400.00 for that purpose. Mrs. Ball then went to Rembert, the Mayor of Pineville, and proposed to him that, if the town would relieve her of the subscription she had made, she would donate the 16-foot strip of land to the town for a street. The mayor did not then contend that it was a public street, but declined Mrs. Ball's offer on the stated ground that the town had no funds. He testified:

"I rejected the offer on the ground that we had no money to buy it."

When Mrs. Ball contributed toward the graveling of the street, her dealings were with Herndon, as an individual, and not with him as agent of the town. Herndon was in no way connected with the town officially. Mr. Rembert, the mayor, was asked:

"You nor the town had no dealings with Mrs. Ball on the subject of graveling this street?"

He said:

"No;"

and,

"You let no contract between Herndon and the town, no advertised contract, the town paid nothing for the gravel?" and he said,

"No."

There is no evidence that the town ever took over and worked the street. Mr. Downs, former mayor, testified that, during his administration, the town did some work out there in the way of plowing out ditches and put in one bridge over a ditch, but that was not opposite Mrs. Ball's property, but was farther out. The testimony of Mrs. Ball, Mr. Ball, Louis Hoffman, Wyatt Hoffman, Willie Chapman and Phillip Frank, all of whom have lived on or near the so-called street for many years, is to the effect that the town had never worked the street, but had, on occasions, used the alley as a dumping ground for rocks taken from other streets. Mr. Dannenberg said that at one time Downs had it worked with slips, but if Downs recalled that, he did not say so. Mrs. Ball, the defendant, testified positively that she had never at any time intended to dedicate her property for use as a public street, but that she had permitted people to use this passageway, as a matter of convenience to her neighbors.

In 1903, a civil engineer made a plat of the town, showing this passageway and he called it "Ball Street," but it is not shown that Mrs. Ball knew anything about the map and, if she had known about it, that would not be sufficient evidence of an intention to dedicate. If any property was ever sold with reference to this plat, or with reference to this street, the record fails to show it and, in fact, all the testimony shows that for about thirty-five or forty years the opening was known and referred to as "Milhas" or "Ball Lane."

Mrs. Ball testified, and her testimony is not disputed, that in 1927, when she was notified that the town contemplated the laying of the sidewalks, she consulted an attorney and asked him to enjoin the proceedings, and that her attorney made protest to the town officials and notified them to desist.

We find no testimony in the record which indicates that Mrs. Ball ever in-

tended to dedicate her property for a public street, and, aside from the testimony of Downs, the ex-mayor, that at one time he had the ditches along the sides of the lane plowed out, there is nothing to show that the town ever intended to acquire the property until· about the time it bought the strip of land ten feet wide on the opposite side of the land and began to lay the sidewalks.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs in both courts.