McBRIDE, Judge.
By this petitory action plaintiff, Jefferson Parish School Board, created under LSA-R.S. 17:51, seeks to be declared the owner of two squares of ground located in the Parish of Jefferson, of which it alleges three of the defendants "are in adverse ownership and/or possession”; a moneyed judgment is also sought against three defendants.
It is the contention of plaintiff that said two squares which are designated as Nos. 41 and 42, in Section “D”, of Lake Villas Subdivision, were legally dedicated to the public for park, schools or churches, and whereas no dedication for a church or churches may be inferred in view of the fact that no specific religious denominations or churches were mentioned, and, moreover, as the Jefferson Parish Council has rescinded the dedication of the property for parks or playgrounds, this leaves the two squares of ground in question dedicated solely for the purpose of public schools or public education and that it, as the parish school board in the district in which the squares are situated, would have the exclusive right under statutory law to possess and administer the property for such purposes. In addition to praying for judgment against defendants, Jeff, Inc., Morgan W. Walker, and the Department of Highways of the State of Louisiana decreeing plaintiff’s ownership of the two squares and ordering them to deliver possession, it further prays for injunctive relief against the Department of Highways enjoining that defendant from using any part of Square 41 for highway purposes until the payment of just compensation to plaintiff for the land the Department purportedly purchased from Jeff, Inc., Alfred J. Bonomo, Jr., and Harry P. Moran, Jr., or, in the alternative, that plaintiff have judgment against Jeff, Inc., Bonomo, and Moran, for the sum of $6,-001.00, which represents the sales price of the portion of Square 41 which it is alleged they illegally sold to the Department of Highways.
For a better understanding of the case and the issues therein involved, at this time a recitation of the facts in connection with the property would be most helpful.
The first reference to “dedication” is found in the sale of a tract of ground (in which are embraced the two squares in question) dated March 16, 1925, by Liberty Land Company, Inc., to West Orleans Beach Corporation, Inc., by act before Louis G. Lemle, Notary Public, recorded Conveyance Book 67 folio 236, Jefferson Parish, said act containing the proviso:
“It is further agreed and understood that one of the considerations for the purchase of the above described property is that the purchaser will reserve and dedicate two (2) squares of ground, lying just between this property and the property already subdivided and known as Liberty Lots for parks, schools or church purposes.”
*73 Thereafter West Orleans Beach Corporation subdivided the tract as evidenced by an authentic act before Severn T. Darden, Notary Public, on June 5, 1929, registered Conveyance Book 101, folio 651; said subdivision was denominated “Lake Villas Subdivision,” all in accordance with a plan made by F. B. Grevemberg, Civil Engineer, dated March 1929 and certified as correct as of June 1, 1929, and approved by the engineer of the Parish of Jefferson. The plan is attached to the aforesaid act of Darden. Grevemberg’s said plan shows the land involved in this litigation as being Squares 41 and 42, Section “D”, of Lake Villas Subdivision, a facsimile of the pertinent portion of the plan being thus:

In the Darden act in paragraphs numbered 3 and 4 and in paragraphs identified by the letters (a) through (x) West Orleans Beach Corporation specifically set out certain described and designated avenues, streets, parks, and drainage ways which it clearly and unquestionably dedicated to the public use in general and the Parish of Jefferson in particular. Following paragraph “x”, which sets forth the dedication of Utica Street, there appears the following language:
“Also a dedication of two (2) squares of ground known as Numbers 41 and *74 42, to be dedicated for the purposes outlined in the acquisition of property by the West Orleans Beach Corporation, Incorporated. * * * ” (Then follow the dimensions of the squares.) (Italics ours.)
Worthy of particular note is the legend appearing on the Grevemberg plan reading as follows:
“NEW ORLEANS, LA. JUNE Sth, 1929
We, the West Orleans Beach Corporation, Inc., owners of the property shown on this map, by virtue of a resolution by our Board of Directors passed at a meeting held on June 4th, 1929, hereby approve of this plan of LAKE VILLAS, a subdivision of our LIBERTY TRACT, and do hereby formally dedicate to and for PUBLIC USE all streets, highways, drives, avenues, drainage canals and etc., as shown hereon.
This plan is shown in four sheets.
WEST ORLEANS BEACH CORP., INC.”
The chain of title of Squares 41 and 42 since the creation of the subdivision known as “Lake Villas Subdivision” is as follows: October 23, 1956 (Conveyance Book 411 folio 469) West Orleans Beach Corporation sold both squares to Jeff, Inc., without mention of a reservation or dedication thereof; March 3, 1958 (Conveyance Book 443 folio 56) Jeff, Inc., sold certain undivided interests in the squares to Robert R. Richmond and Alfred J. Bonomo, Jr. However, this act of sale recited:
“This sale is made and accepted subject to the restrictive covenant, so far as it may be effective, set forth on the above recited survey, reading ‘Whole blocks No. 41 and 42 reserved for park, schools or churches’, which restriction is not created or reimposed hereby.”
On November 5, 1959, by Ordinance No. 4317 (Conveyance Book 492 folio 686), the Jefferson Parish Council [successor of Police Jury of the Parish of Jefferson; see Const. 1921, Art. 14, § 3(c)], LSA after reciting that “Squares 41 and 42, Lake Villas Subdivision, in Section ‘D’ thereof, as shown on the plan of F. B. Grevemberg, C. E., dated March, 1929, have never been used by the public for the purpose for which they were restricted or dedicated,” accepted and then, “to the manifest interest of the residents and inhabitants of the Parish of Jefferson,” rescinded and revoked the dedication ; the ordinance stated that the Council acted under authority of the provisions of LSA-R.S. 33.:4718; the ordinance reads in part as follows:
“WHEREAS, JEFF, INC. is the owner of the following described property and is desirous of dedicating the said property for public use and revoking said dedication in accordance with the provisions of Act 229 of 1958, and
* * * * * *
“Section 2. That the dedication of Squares 41 and 42, Section ‘D’, Lake Villas Subdivision, be and the same is accepted.
“Section 3. That the dedication of Squares 41 and 42, Section ‘D’, Lake Villas Subdivision, be and the same is hereby rescinded, revoked and set aside and that the ownership thereto shall hereby revert to the present owner of the said property.”
On September 29, 1960 (Conveyance Book 516 folio 525), Jeff, Inc. and Robert R. Richmond sold an undivided interest in the two squares to Harry P. Moran, Jr.; August 11, 1961 (Conveyance Book 536 folio 304) Alfred J. Bonomo, Jr., sold his undivided 4£iths interest in the squares to Harry P. Moran, Jr., and Jeff, Inc., the act containing the recitation that:
“This sale is made and accepted subject to any restrictions which may *75 bear against the property, none of which are admitted, created or reimposed by reference herein.”
On October 5, 1961, the Jefferson Parish Council for some unexplained reason adopted Ordinance No. 5257, effective October 16, 1961, registered Conveyance Book folio by which it again purported to accept and then revoke the dedication for public purposes of Squares Nos. 41 and 42, Section “D” of Lake Villas Subdivision. Ordinance No. 5257 is couched in language similar to that used in the previous Ordinance No. 4317. Again Jeff, Inc., is mentioned as the owner and dedicator of the property.
By act (which cannot be found in the record) dated November 8, 1961, Conveyance Book folio Jeff, Inc., Alfred J. Bonomo, Jr., and Harry P. Moran, Jr., conveyed a portion of Square 41 to the State of Louisiana, Department of Highways, for use as part of the Kenner-New Orleans Interstate Highway.
All defendants interposed the exceptions of no right and no cause of action which were overruled by the trial court and are not reurged before us. The exceptions of non-joinder of indispensable parties defendant, which defendants also filed, were maintained, and pursuant to an order of court the Jefferson Parish Council and its individual members were impleaded as parties defendant, plaintiff seeking, as against them, “the relief originally prayed for.” All defendants then filed answers, the pith of which is that there was never a dedication of the squares for public purposes, but that if there were such a dedication, the same was effectively revoked by the Parish Council and plaintiff has no interest in the property. Numerous third party pleadings were filed which need not be detailed or elaborated upon.
After a trial on the merits of the case, there was judgment in favor of Jefferson Parish School Board and against all defendants except Jefferson Parish Council and its individual members and the Department of Highways recognizing plaintiff's ownership of Squares 41 and 42, Section “D” of Lake Villas Subdivision; there was judgment in favor of plaintiff and against the Department of Highways of the State of Louisiana, Bonomo, Moran and Jeff, Inc., in solido, for $6,001.00; there was judgment in solido in favor of Department of Highways of the State of Louisiana against its third party defendants, Jeff, Inc., Bonomo, and Moran, for a like sum; the judgment further decreed that the rights of all defendants making third party demands against certain other defendants and the rights of the Jefferson Parish Council “are not adjudicated in this judgment, but are reserved to these parties for further proceedings and adjudication.” The Department of Highways, Jeff, Inc., Walker, Bon-omo, Richmond, Moran, Jefferson Parish Council, its individual members, and West Orleans Beach Corporation have perfected appeals from the judgment.
Appellants assign several errors in the judgment, only one of which need be mentioned or discussed, and that is that the district court erred in holding that a legal, valid and binding public dedication of Squares 41 and 42 of Section “D”, Lake Villas Subdivision, was ever effected so as to place title in the public in general and the Parish of Jefferson or the Jefferson Parish School Board in particular.
The record is silent as to whether any of the defendants are in corporeal possession of the property; if the defendants are in possession, the plaintiff is bound to make out its title thereto in order to be successful in its petitory action; if defendants are not in possession, it is incumbent upon plaintiff to prove a better title than the defendants have. LSA-C.C.P. art. 3653. There is no evidence whatever tending to show that the property has ever been used for park, schools, or church purposes. Whether the land is open or vacant or contains improvements, we have no means of knowing from the record.
*76 We have made a most diligent study of Grevemberg’s plan and the various stipulations of the parties made in the series of acts of transfer above-mentioned, and nothing therein would lead us to a conclusion that there has been a dedication of Squares 41 and 42 to public purposes. In the act whereby West Orleans Beach Corporation acquired title to the whole tract from Liberty Land Company all that the purchaser agreed to was that it would reserve and dedicate two squares of ground for park, schools or churches. From a careful reading of the purchaser’s stipulation, we can only conclude that a reservation or dedication of the two squares at some future time was in contemplation of the con-tractants. Likewise, the Darden act, which evidences the subdividing of the land, contains specific paragraphs dedicating with particularity the avenues, streets, parks and drainage ways which were then dedicated to public use. The language in the unnumbered paragraph of said act reading, “Also a dedication of two (2) squares of ground known as Nos. 41 and 42 to be dedicated for the purposes outlined in the acquisition of property by the West Orleans Beach Corporation, Incorporated,” etc., according to the import we place thereon, means, also, that the subdivider would at some future time consider the making of a dedication. We find nothing in the record where any such dedication has yet been made.
The legend on Grevemberg’s plan formally dedicates to and for public uses the delineated streets, highways, drives, avenues, drainage canals, etc., as shown on the plan. Nothing is mentioned regarding a dedication of blocks 41 and 42, on each of which appears the notation “whole block reserved for park, schools or churches.”
Appellee relies heavily on Johnston v. City of New Orleans, 234 La. 697, 101 So. 2d 206. In that case the plaintiff dedicated to public use for school and playground purposes Square No. 22 located in the center of a subdivision which was duly accepted on behalf of the City of New Orleans. By his suit the plaintiff sought to have the dedication declared null and void insofar as it purported to be a dedication or an offer of dedication of said square for schools and playground purposes, on the ground that the square had never been used for either school or playground purposes and that such nonuse constituted an abandonment. The plaintiff also alleged that the exclusive jurisdiction of the construction of school buildings and other improvements on school properties is vested in the Orleans Parish School Board, whereas the City of New Orleans has the exclusive jurisdiction and control of playgrounds, and that such conflict of jurisdiction between these two corporate entities makes impossible the use of said Square No. 22 for either school or playground purposes. The Court held that the act of dedication expressed no reservation or restriction as to a time limit within which the property should be used as proposed, nor was any reservation made that it should revert to the dedicator because of nonuse within any prescribed time and declined to revoke the dedication. With reference to the asserted conflict of interest, the Court remarked that it cannot be denied that the beneficiary for such a dedication is the public, an ever-existing grantee, capable of taking and enjoying the rights, privileges, and use of the dedication, and the property having been dedicated to public use for school and playground purposes, the city and the school board are authorized to validly establish joint facilities to accomplish the purpose contemplated by the grant. The Court having found there was a valid dedication in the cited case, it has no application to the instant matter.
We are also cited to Police Jury, Parish of Jefferson v. Noble Drilling Corporation, 232 La. 981, 95 So.2d 627 (decided in 1957), wherein the record disclosed that the property involved was originally part of a plantation which the owner sold in 1909 according to a plan of subdivision whereby the property had been divided into plots, including an area known as “Glisson Park.” The property passed through the hands of sev *77 eral mesne owners, one of whom subjected the property to the uses of a park. The Court held that the showing of the park area on the plan constituted an effective dedication under the then prevailing Act 134 of 1896, LSA-R.S. 33:5051 and the Police Jury of the Parish of Jefferson was recognized as owner of the park. There again the court held there had been a dedication.
It was also held in Town of Vinton v. Lyons, 131 La. 673, 60 So. 54, which is in-apposite here, that there was a valid statutory dedication by virtue of the filing of a plan of resubdivision upon which has been noted the word “park.”
We cannot divest our minds of the words appearing on Grevemberg’s plan of subdivision, to-wit: “Whole block reserved for park, schools or churches.” This, we think, indicates clearly there was no intention to dedicate for public uses at the time the plan was drawn and the resubdivision confected.
From 16 Am.Jur., “Dedication,” p. 370, we quote:
“ * * * It has been held, however, that where a designated space on a map or plat is marked ‘Reserve’ or ‘Reserved,’ although there is an absence of statement of the purpose of the reservation, there is no intention to grant to the public and no dedication takes place. Where a plat filing for record has a strip marked ‘Reserved for Wharves,’ the word ‘Reserved’ means kept for future use, retained, or kept back, and does not constitute a dedication of the land so marked. It is generally held that where a reservation of private land for a specified purpose is made on .a map or plat, a reservation to the private use of the owner is implied rather than a dedication to the public. % * * >>
One of the uses for which Squares 41 and 42 were reserved was “churches,” and it might be well to point out that under the laws of this state dedications of places of public worship may not be inferred from designations on plans of subdivision. The Supreme Court said in Livaudais & David v. Municipality No. Two, 5 La.Ann. 8:
“As was held in the former case, places of public worship as well as places of public amusement are invariably with us private property, and no dedication to the public can be predicated upon the designation of such places on the plans of division of towns and faubourgs.”
In Xiques v. Bujac, 7 La.Ann. 498, it was said:
“The spot thus designated on the plan for the erection of a church is not a locus publicus, but private property. »
No particular form is required for the dedication of land to public use and all that seems necessary is the assent of the owner of the land and the fact of its being used for the purposes intended. La Salle Realty Co. of Louisiana, Inc. v. City of New Orleans, 169 La. 1035, 126 So. 545; City of New Orleans v. Carrollton Land Co., Limited, 131 La. 1092, 60 So. 695; McNeil v. Hicks & Howell, 34 La.Ann. 1090; Pickett v. Brown, 18 La.Ann. 560; Municipality No. Two v. Palfrey, 7 La.Ann. 497, and many other authorities.
However, a plain and positive intention to dedicate is an essential element of a dedication, and that intention must be shown by language or acts so clear as to exclude any other reasonable hypothesis, or, at least, to clearly convince the judicial mind. Town of Kenner v. Zito, 141 La. 76, 74 So. 636; Quirk v. Miller, 129 La. 1071, 57 So. 521; City of Alexandria v. Thigpen, 120 La. 293, 45 So. 253; De Grilleau v. Frawley, 48 La.Ann. 184, 19 So. 151; City of Shreveport v. Drouin, 41 La.Ann. 867, 6 So. 656; Carrollton Rail Road Company v. Municipality No. Two, 19 La. 62; Linton v. Guillotte, 10 Rob. 357; Kemp v. Town of Independence, La.App., 156 So. 56; Batton v. Babb, *78 La.App., 150 So. 417; Town of Pineville v. Ball, 10 La.App. 283, 119 So. 738; Bomar v. City of Baton Rouge, 4 La.App. 232.
In a doubtful case the presumption must be that no dedication was effected. LSA-C.C. art. 753 provides:
“Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected.”
The weight of the authorities from other jurisdictions is to the effect that where a private landowner makes a reservation on a plat of ground for a specified purpose, the inference is that the reservation was made for private use and is not to be implied a dedication to the public.
In Harris v. City of St. Helens, 72 Or. 377, 143 P. 941, Ann.Cas.1916D, 1073, the map had the following written upon it: “The Strand, Reserved for Wharfs.” The plan contained no other words to indicate what was to be done with said tract. The question was whether there was a dedication of the property to public uses. The court said:
“In this case is it shown that the owner of the land in question intended to devote it to a public use ? He designated the land as ‘The Strand,’ and added, ‘Reserved for Wharves.’
“The word ‘strand’ signifies ‘shore’ or ‘bank’ of the sea or a river. Black’s Law Dictionary (2d Ed.) p. 1113.
“A ‘wharf’ is a bank or other erection formed on the shore of a harbor, river, or canal for the convenience of lading and unlading ships or boats. As shown by the plat referred to supra the owner ‘reserved’ the strand or shore of the river for wharves.
“The terms of a writing are presumed prima facie to have been used in their 'primary and general acceptation.’ L.O.L. § 718. The Century Dictionary defines ‘reserved’ thus: ‘Kept for another or future use; retained; kept back.’ This is the ‘primary and general acceptation’ of that word. The phrase ‘Reserved for Wharves,’ written in that part of said plat, marked ‘Strand,’ signifies that the owner retained or kept back the tract represented by that space for wharves. Wharves may be private property; and hence the words ‘Reserved for Wharves’ do not manifest an intention on the part of the owner to part with the title to the strand or to devote it to a public use. He may have intended to retain it until it should be needed for wharves, and then sell it to persons desiring to engage in the business of operating wharves. There is nothing in the words used to indicate that he intended to devote said property to the public use as a place for wharves. The use of the word ‘reserved’ tends to negative such an intention.”
In a note appearing beneath Harris v. City of St. Helens, supra, Ann.Cas.1916D, 1079, the following comments appear:
“In accord with the holding of the reported case, it is generally held that where a reservation of private land for a specified purpose is made on a map or plat a reservation to the private use of the owner is implied, rather than a dedication to the public. Grant v. Davenport, 18 Ia. 179; Baker v. Vanderburg, 99 Mo. 378, 12 S.W. 462; Eugene v. Lowell, 72 Ore. 237, 143 Pac. 903; Atlantic [Atlanta] v. Texas etc. R. Co. 56 Tex.Civ.App. 226, 120 S.W. 923. It is a cardinal rule that animus dedicandi is essential to dedication and where there is a lack of clear and unequivocal intention it is held that there can be no grant by way of dedication to the public. Thus, in Grant v. Davenport, supra, the court was called on to determine whether a tract bounded on three sides by dedicated streets and on the fourth by the Mississippi *79 river and designated as ‘Reserved Landing/ was dedicated to the public. The court held that the intention to appropriate the tract to the public being lacking there was a private reservation, barring public rights in the property. In Baker v. Vanderburg, 99 Mo. 378, 12 S.W. 462, it was held that the words ‘This park is reserved from public use, and title kept in proprietors, E. M. McGee, N. Holmes’ written on the face of a designated block of a platted tract of land negatived an intent to dedicate it to the public. The court said: ‘Dedications, it has been said, have been established in every conceivable way by which the intention of the party could be manifested. * * * But the acts and declarations of the landowner, indicating the intent to dedicate his land to public use, must be unmistakable in their purpose and decisive of their character . * * * ’ In Eugene v. Lowell, 72 Ore. 237, 143 Pac. 903, the plaintiff sued to recover the possession of a tract of land which it claimed had been dedicated by the defendant’s predecessors in title. On the plat filed the block in question was marked ‘Park Reserved.’ The court said: 'The rule of construction, however, as laid down by Elliott in the second edition of Roads and Streets, Section 119, is to discover and give effect to the intention of the party as manifested by his acts. We must therefore attend to the word “reserved,” appearing upon the plat, when we undertake to construe that document, remembering that words are to be taken in their ordinary signification unless something to the contrary appears. “Reserved” is defined by Webster as “kept or set apart or aside for future or special use, or for an exigency.” The Century Dictionary definition is “kept for another or future use, retained kept back.” The Standard and Encyclopedic Dictionaries are to the same effect. To dedicate to the public use is to give to the public, the intention of the owner being to part with the control and title of the property; but to use the word “reserved,” as in this instance, is to retain the property and to make an exception in what would otherwise be a general grant. If, in dedicating or giving away something, a part is retained or kept back, as the lexicographers say, it is manifest that the portion kept back or reserved is not included in nor affected by the dedication.’ In Atlanta v. Texas, etc. R. Co. 56 Tex. Civ.App. 226, 120 S.W. 923, the court in holding that there had been no dedication said that in order to constitute a dedication of private property to the public it must clearly appear that the owner intended absolutely and irrevocably to set apart the land for public use and that no intent was made evident by the words ‘Reserved for railway purposes.’
“Similar to the rule laid down in those cases where the reservation is marked on the face of the plat, it has been held that there is no dedication where in a deed or declaration appended to a map it is stated that certain property is ‘reserved.’ Thus in Mt. Vernon v. Young, 124 Ia. 517, 100 N.W. 694, a controversy arose as to the title to a strip of land bearing no marking on the plat and which the plaintiff contended had been dedicated to the public as a street. All the other streets were designated by name. The following was the appended reservation: ‘And we do hereby set apart for public use as public highways all the land described in said map as streets, the width and dimensions shown by said map, reserving at the same time all the land included in said map as private property, except that portion which is designated as streets.’ The court held that the plat as a whole did not afford satisfactory evidence of the alleged dedication of the strip of land to which the title was in dispute.
*80 “It lias been held that where a designated space on a map or plat is marked ‘Reserve’ or ‘Reserved,’ although there is an absence of statement of the purpose of the reservation, it cannot be said that there is an intention to grant to the public and no dedication takes place. Ft. Smith, etc. Bridge Dist. v. Scott, 111 Ark. 449, 163 S.W. 1137; Farlin v. Hill, 27 Mont. 27, 69 Pac. 237; Cleveland v. Bergen Bldg. etc. Co. N.J.Ch.) 55 Atl. 117. Thus, in the case first cited, the evidence showed that when the town of Van Burén was platted an irregular strip of land between ‘Water Street’ which ran parallel with the Arkansas River and the meander line of that stream had been marked in the map as ‘Reserve.’ A portion of this strip having been condemned for the purpose of placing abutments to a bridge, it was necessary to determine whether the strip marked ‘Reserve’ had been dedicated to the public. The court held that there had been no dedication to the public and that the title to the strip remained in the dedicator. In Farlin v. Hill, 27 Mont. 27, 69 Pac. 237, it was held that there was no dedication of certain uncolored portions marked on a plat ‘Reserved’ where the plaintiff having complied with all the provisions of law for the making and filing of a plat and instrument of dedication and addition had designated all the lots and streets thereon in color.
“ * * * In Daniels v. Wilson, 27 Wis. 492, the court held, in determining the effect of the words ‘Reserved Public Square’ as found on a plat of land, that it could not be said that the words should be construed as conveying or dedicating the land in question to the public absolutely, and that parol evidence could be resorted to for determining the real object and extent of the dedication. In Emmons v. Milwaukee, 32 Wis. 434, the court restricted the application of the words ‘Reserved for Lighthouse’ as constituting a dedication of the land designated by a small square at one end of a larger space over which the words were written. But contrary to the more general view, in Scantlin v. Garvin, 46 Ind. 262, it not being necessary to decide the point in determining the issue raised in that case, the court said obiter that the phrase: ‘The block through which Main street and Third street, pass is. reserved for a public square,’ written at the foot of the plat, did not indicate an intention to part with the title to the property, but rather the opposite.”
We repeat that we can uncover in the record no evidence of an intention on the part of West Orleans Beach Corporation or any subsequent owners to dedicate the subject squares to public uses and that the reservation for the stated uses was for the benefit of the owners of the property.
While Ordinance No. 4317 of the-Jefferson Parish Council, adopted November 5, 1959, recited that Jeff, Inc., “the owner” of the land, was making the dedication thereof, it will do well to mention here that there is no evidence whatever that any representative of Jeff, Inc., ever appeared before the Council or that he had the corporation’s authority to dedicate the property to public uses. Furthermore, if any corporate representative did attempt to dedicate-the property to such uses, such action would have been ineffectual for the simple reason-Jeff, Inc., was only a co-owner with proprietorship of but an undivided interest in-, the property. Richmond and Bonomo were-the other co-owners. The same may be-said with reference to the subsequent Ordinance No. 5257, effective October 16, 1961.. Jeff, Inc., was named as the dedicator, when in truth it had but a fractional interest in. the property. At any rate, the Parish Council in both ordinances rescinded and revoked the alleged dedications under LSA— R.S. 33:4718, but whether good or bad the-dedications were revoked.
*81 In view of the above conclusions, it is unnecessary to pass on the many third party demands.
For the reasons assigned, the judgment appealed from is reversed in toto. It is now ordered, adjudged and decreed that there be judgment in favor of all appellants dismissing the suit of Jefferson Parish School Board; said plaintiff-appellee being cast for stenographers’ costs for the taking of testimony, but is relieved of liability for any other costs (LSA-R.S. 13:4521).
Reversed.