(60 South. 54.)

No. 19,081.

TOWN OF VINTON v. LYONS et al.

(Nov. 18, 1912.)

*(Syllabus by Editorial Staff.)*

1. DEDICATION (§ 19*)—PLATS—PARKS—SALES OF LOTS—REVOCATION.

The recording of a plat with a vacant block marked "park," and the sale of lots according

to the plat, is ·an irrevocable dedication of the park to public use.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47; Dec. Dig. § 19.*]

2. REAL ACTIONS (§ 8*)—SCOPE OF RELIEF.

In a petitory action by a municipal corporation to recover land dedicated as a public park, where there ·is a prayer for general and equitable relief, the court may render such judgment as the allegations of the petition justify, including a recognition of the dedication. and that plaintiff is entitled to the care and custody of the park as representing the public.

[Ed. Note.—For other cases, see Real Actions, Cent. Dig. §§ 26–35; Dec. Dig. § 8.*]

3. CORPORATIONS (§ 425*)—ULTRA VIRES ACTS —ESTOPPEL TO URGE.

In an action by a town to recover land dedicated for a park, it cannot be urged by the corporation dedicating such property or its grantees that it had no authority to do so, where such corporation has been selling lots, according to the plat dedicating such park, for years, to its profit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1697–1701, 1705; Dec. Dig. § 425.*]

4. IMPROVEMENTS (§ 4*)—PUBLIC SQUARE— GOOD FAITH.

One who has made improvements on property dedicated as a park, thinking it his own, cannot recover therefor in reconvention when evicted by the city.

[Ed. Note.—For other cases, see Improvements, Cent. Dig. §§ 4, 7–26; Dec. Dig. § 4.*]

5. COVENANTS (§ 130*)—COVENANT OF WARRANTY—PARTIAL EVICTION—DAMAGES.

One who is evicted by a city from a portion of property bought by him cannot, in reconvention, obtain a judgment against his grantor, where it does not appear how much he paid for that particular portion; but he may recover the price his grantor paid under a warranty deed for it, where he has been subrogated to all rights thereunder.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 245–253, 255, 256, 257; Dec. Dig. § 130.*]

6. INTEREST (§ 65*)—PLEADING.

Where there is no allegation or prayer for interest, none can be allowed.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 146, 148–153; Dec. Dig. § 65.*]

7. TAXATION (§ 540*)—RECOVERY OF TAXES PAID—PUBLIC PROPERTY.

Judgment cannot be rendered against a town in favor of one who paid taxes on public land, thinking it was his own.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1001; Dec. Dig. § 540.*]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu ; Winston Overton, Judge.

Action by the Town of Vinton against Raymond C. Lyons and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Leon Sugar and Williams & Williams, all of Lake Charles, for appellants. Gayle & Porter, of Lake Charles, for appellee.

PROVOSTY, J. The reasons for judgment of the learned judge a quo in this case read as follows:

"Plaintiff, the town of Vinton, a municipal corporation recently created, instituted this suit to recover of defendants block 7 of said town, alleging that said block was dedicated by the Southern Real Estate, Loan & Guarantee Company, the founder of the town, as a public park, and further alleging that defendants were in possession thereof without right.

"Some of the defendants answer by saying they are only lessees, having leased from Dr. S. M. Lyons, who claimed to be the owner thereof, and pray that Dr. Lyons be called in warranty to defend the suit.

"Dr. Lyons answers this call by denying the allegations of plaintiff's original and supplemental petition, and by asserting his ownership to the property. His answer sets forth that he acquired the same from the Vinton Mercantile Company, Limited, who in turn acquired it from the Southern Real Estate & Guarantee Company, who, as aforesaid, was the founder of the town.

"Assuming the position of plaintiff in reconvention, he asks, in the case of eviction, judgment against the plaintiff for the improvements placed on the property, and also asks for judgment in warranty against his vendor, the Vinton Mercantile Company, Limited, and also judgment against the Southern Real Estate, Loan & Guarantee Company in warranty under a subrogation to all actions of warranty of the Vinton Mercantile Company, Limited; this last prayer for judgment against the guarantor being for $900. The Vinton Mercantile Company, Limited, does not appear to have been cited.

"The Southern Real Estate, Loan & Guarantee Company, an Iowa corporation, of which the late Dr. Seaman A. Knapp was president, purchased a tract of land in the western portion of this parish on the Louisiana Western Railroad, desiring to establish a town. This company platted their land, divided it into streets and blocks, and subdivided the blocks into lots, with the exception of this one block

which was not so subdivided. This block is virtually cut in half diagonally by the Louisiana Western Railroad's right of way, leaving two pieces of ground each forming practically a right angle triangle. These two pieces constitute block 7 of the plat, and block 7 is the property in dispute. The company named its town Vinton. The plat was made by order of the company by Frank J. Hardy, parish surveyor, in June, 1889, and was filed in the clerk's office of the parish of Calcasieu and recorded in Book T of the miscellaneous acts, which we know was the book of conveyances, on March 29, 1890. On this plat there is written on each of the right angle triangles of block 7 the word 'park.' None of block 7 on this plat is divided into lots, being the only block of the plat not divided into lots. As this plat was the one filed in the clerk's office and recorded in the conveyance records of the parish, I regard it as the official map of the company, especially as it has upon it the signature of the president in his official capacity, and also the signature of George Horridge, who at that time was the vice president, and likewise the signature of the parish surveyor. I further consider it as the official plat because some of the deeds offered in evidence refer to a plat duly recorded, and this in the only plat which appears to have been recorded. I mention this because there are two other plats in evidence, upon neither of which does the word 'park' appear on block 7. On one of those two, however, it is in evidence that the word 'park' was upon each portion of the block, but that it has faded away. This may well be, because on the recorded plat the word 'park', together with other writing, has become very dim. I may here say that, while it is not contended otherwise, it would not be amiss to say that the word 'park' was on the plat that was recorded at the time of the recordation. The conveyance record is now destroyed. By the evidence of Mr. Livingston who has a tissue copy, the plat as there recorded shows the word 'park' on each portion of the block in question. After the recordation of the plat, many sales were made, which were also recorded in the conveyance records, some of which refer to a plat duly recorded, and none of which are intelligent without reference to the plat—that is to say, they were all made from the plat.

"In February, 1902, about 12 years after the recordation of the plat, the Southern Real Estate, Loan & Guarantee Company sold the property in question to the Vinton Mercantile Company, Limited, which in turn, in 1906, together with other property, sold it to Dr. S. M. Lyons under warranty deed and with subrogation to all of its actions of warranty. It is because of this subrogation of warranty that Dr. Lyons asks for judgment in reconvention against the Southern Real Estate, Loan & Guarantee Company for $900, the consideration stated in the sale from that company to the Vinton Mercantile Company, Limited, Dr. Lyons' vendor.

[1] "In my opinion the evidence shows a

clear intent on the part of the owner of the soil to dedicate block 7 to the public as a park. I fail to see how the word 'park,' written on the recorded plat, could otherwise be construed. I am not impressed with the idea that it could fairly be interpreted to mean a reservation, as a private park, for the company. To so hold under such circumstances would be to set a trap for innocent purchasers of adjoining lots. The word 'park' written on a block at the instance of the owner in a plat, subdividing a tract of land into lots and blocks for the purpose of founding a town, is as significant of the dedication of such block to the public for a park, as the word 'street' on such plat is of a dedication for a public street. There can be no doubt that under our jurisprudence the word 'street,' written by the owner on a strip of ground running through such plat, where sales are made from it, effectively dedicates such strip to the public as a street. Flournoy v. Breard, 116 La. 224 [40 South. 684]. This same doctrine relative to the dedication of streets extends to and is applicable to dedication of public parks. Am. & Eng. Enc. of Law [2d Ed.] vol. 9, p. 25.

"In Archer v. Salinas City [93 Cal. at page 49, 28 Pac. at page 840] 16 L. R. A. at page 145, it is said:

" 'The same principles which are applicable to the dedication of a public street apply to the dedication of a public park or square. All dedications for public uses are to be considered with reference to the purpose for which the dedication is made, or the uses to which the property dedicated may be applied, and that purpose may be ascertained by the dedication which the owner has affixed to the land upon the map, whether it be a street, a school lot, or a public park. The setting apart of a public park upon such map is for the convenience and enjoyment of the inhabitants of the place; and, as it enhances the value of the private property thereon, so the owner who has dedicated it is presumed to have received, in the increased prices for which that property was sold, the compensation for its surrender to the public as a public park. The word "park," written upon a block of land designated upon a map, is as significant of a dedication as the word "street" written upon such map. The word carries with itself the idea of an open or inclosed tract for the comfort and enjoyment of the inhabitants of the city or town in which it is located, and is so defined by lexicographers.'

"This doctrine is supported by the decisions of the courts of last resort of many of the states of the Union, as would appear from the annotations made to the case of Cole et al. v. Minnesota Loan & Trust Co. et al. [17 N. D. 409, 117 N. W. 354] 17 Ann. Cas. 304. If no dedication of a public park was intended, why not only write the word 'park' thereon, but fail to divide the block into lots. It is noteworthy that this is the only block on the plat of the town of Vinton as made and filed for recordation and recorded in the conveyance records by the Southern Real Estate, Loan & Guarantee Company, which was not divided into lots. The reason is clear; the block was intended, as the dedication indicates, for a public park.

"It is said, however, that there was no acceptance of the dedication. Evidence was offered by the town to show that public meetings from time to time had been held there. The holdings of two or three of these meetings had been explained by Dr. Lyons, who states that he gave the one in charge of the meetings permission to hold them there. However, in my opinion there was an acceptance of the dedication, and the dedication became binding and irrevocable the moment lots were sold from the plat, and the plat and sales were recorded in the conveyance records. The setting aside of the two parcels of land designated as block 7 of the plat as a public park had the effect of increasing the value and desirability of the other lots, especially those fronting thereon. The law considers, under such circumstances, that the value of the land dedicated goes into the remaining property and is received by the owner in making sales at an increased price. Besides it may be said that the owner, in laying out a town site when he provides reasonably for parks, makes sales of lots more readily, for the more advantages that property has the more readily it sells. A great number of lots were sold from the plat of the town of Vinton long prior to the sale to the Vinton Mercantile Company, Limited. It would be contrary to equity and justice to hold that a real estate company could plat a town, make provisions for a park, sell lots from the plat after filing it for recordation and after the purchasers had built homes on their lots, and after the company no doubt received a better consideration for those lots, or many of them, because of the dedication, to then withdraw the dedication and make a sale of the property to a private individual. To so hold, it seems to me, would be to set a trap for the unwary, and not only this, but it would place owners of real estate at a disadvantage in laying out town sites and subdivisions to towns, for it is to their interest, quite frequently, that they make some provision of this kind, and, in case of laying out a town, they could give no assurance that what they marked on their plat as a park was indeed a park, and the proposed purchaser of the lots is the one in whom the owner has an especial interest at the time. As well might it be said that the owner of the tract of land who desires to subdivide it into lots and blocks may make provision for streets in order to sell his lots and, after he sells all or most of them, reclaim the streets because the dedication has not been accepted. The sale of the lots makes the dedication irrevocable, and this is borne out by the headnote in the case of Cole et al. v. Minnesota Loan & Trust Co. et al. [17 N. D. 409, 117 N. W. 354] 17 Ann. Cas. 304, and cited above. The author, in compiling these notes, states that, under such circumstances, the dedication is irrevocable. It may be noted, in passing, that almost one of the very first acts of the town of

Vinton after incorporating was to institute this suit for the recovery of the park, and while it is not of record, and perhaps would not serve as notice to third persons, yet the evidence discloses that, about the time of the sale to the Vinton Mercantile Company, Limited, the people themselves, the village not then being incorporated, undertook to fence in the property, but were stopped by arrests being made for trespass. No doubt this was immediately after they heard of the sale and after the sale was perfected; and, while not necessary to the decision of this case, yet it shows the construction that they placed upon the plat.

"As I have said, the case is not decided upon that point, for there was, long prior to the sale to the Vinton Mercantile Company, a plat of record dedicating the property in question, and from which plat many sales had been made, and these put of record. All of these acts constitute notice to all the world, including the Vinton Mercantile Company, Limited.

[2] "It is also contended that, even if there were a dedication, plaintiff could not recover in this suit because his action is petitory. It is sufficient answer to say that there is a prayer for general and equitable relief, and, under such prayer, the court may render such judgment as the allegations of the petition justify. Therefore the court may render judgment recognizing the block was dedicated to the public for a park, and that the town, as the representative of the public, is entitled to the care and custody of it for such purpose. Such a decree would certainly be responsive to the allegations of the petition.

[3] "It is further urged that the Southern Real Estate, Loan & Guarantee Company possessed no authority to make the dedication, nor had the board of directors authorized this to be done. If this be so, in whole or in part, the corporation having sold lots from the plat for a number of years and reaped the benefits, neither it nor those holding under it can now be heard to say that there was a lack of authority. Besides, I entertain but little doubt that, if the corporation had authority in disposing of the land to plat it into a town, it had implied authority to provide for streets and parks to a reasonable extent by dedication.

[4] "As I have stated, Dr. Lyons asks, in case of eviction, for judgment in reconvention for the value of the improvements placed thereon by himself and his vendor, claiming that both were in good faith. The doctor testifies to his good faith. The sincerity of his statement cannot be questioned. However, in my opinion it is not a question of good faith. The property was a public thing at the time the improvements were placed there.

" 'Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation. * * *' Civ. Code, art. 453.

" 'Things which are for the common use of a city or other places as streets and public squares are likewise public things.' Civ. Code, art. 454.

"Article 861 of the Civil Code provides that:

" 'Works which have been formerly built on public places, or in the beds of rivers or navigable streams, or on their banks and which obstruct or embarrass the use of these places, rivers, streams or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing at the place where they are situated.

" 'And the owner of these works cannot prevent their being destroyed under pretext of any prescription or possession, even immemorial, which he may have had of it, if it be proved that at the time these works were constructed the soil on which they are built was public, and has not ceased to be so since.'

"It will therefore appear that the question is not one of good faith, but that, as the buildings were built on property dedicated to the public, they should be removed. Under the circumstances, equity would dictate that Dr. Lyons be given a reasonable time within which to move them—say six months from the date this judgment would otherwise become executory.

[5] "Dr. Lyons also prays for judgment in reconvention against the Vinton Mercantile Company, Limited, and also against the Southern Real Estate, Loan & Guarantee Company for the price paid for the land. As relates to the Vinton Mercantile Company, Limited, as I have said, not only has this corporation not been cited, but, even if it were, as considerable land was sold the doctor at the same time by that company, I would be unable to say how much of it was paid for the block in question. Therefore a judgment of nonsuit should be entered as to this demand against them.

[6] "It is otherwise, however, as to the Southern Real Estate, Loan & Guarantee Company. The evidence shows that the Vinton Mercantile Company, Limited, paid this company $900 for the property; that the deed to the Vinton Mercantile Company, Limited, was a warranty deed; and that the deed of the Vinton Mercantile Company, Limited, to Dr. Lyons subrogated him to all of their actions of warranty—hence Dr. Lyons is entitled to judgment in reconvention against them for $900. As there is no allegation nor prayer for interest, none can be allowed.

[7] "As relates to the taxes paid on the property, no judgment can be rendered against the town for that, if for no other reason, because the property being a public thing, no taxes were due.

"For the reasons assigned, it is ordered that judgment be entered accordingly; the judgment to be signed on presentation."

We find no occasion to add anything to this complete and satisfactory judgment. The findings of facts therein are fully supported

by the evidence, and the law applicable to those facts is therein correctly stated and rightly applied.

Judgment affirmed, and delay of six months from this date allowed the defendant within which to comply with this judgment. Defendant to pay all costs.