SOMMERVILLE, J.
The city of New Orleans alleges itself to be the owner, for the use of the public, of Frederick Square, bounded by Laurel Grove, Hamilton, Olive, or Fifteenth, and Edinburg streets, in the seventh district of that city; that defendant company has illegally taken possession thereof; and it asks that the defendant be condemned to deliver said property to it; and for all costs, and for general relief.
The defendant filed an exception of no cause of action, which was properly overruled. It answers making general denial of all the allegations in plaintiff’s petition contained, specially denying any dedication of the property therein described for public use; and further specially denies that any one had accepted the property for the use of the public. It then sets up title in itself.
There was judgment in favor of plaintiff, and defendant has appealed.
Defendant has filed in this court a plea of prescription of one, three, five, ten, and thirty years.
[1] “Things which are for the common use of a city or other place, as streets and public squares, are likewise public things.” Civil Code, art. 454.
[2] Such property is out of commerce. It is dedicated to public use, and held as a *1095 public trust, for public uses. It is inalienable by corporations. City of Shreveport v. Walpole, 22 La. Ann. 526. If the position of the city in this suit be sustained, to the effect that the property in question is a public square, defendant cannot have acquired title thereto by prescription or otherwise. Municipality No. 2 v. Orleans Cotton Press, 18 La. 272, 36 Am. Dec. 624; Mayor, etc., of Thibodeaux v. Maggioli, 4 La. Ann. 73; City of Shreveport v. Frank C. Walpole, 22 La. Ann. 526; Town of Vinton v. Lyons, 131 La. 673, 60 South. 54; 3 McQuillin, Municipal Corporations, § 1158.
The city of New Orleans traces its chain of title to Act No. 71 of 1874, p. 119, which act annexes the city of Carrollton to the city of New Orleans, and transfers all the property of the former to the latter. The city of Carrollton was incorporated by Act No. 277 of 1859, p. 219; and it was the successor of the town of Carrollton which was incorporated by Act No. 91 of 1845, p. 47, as amended by Act No. 247 of 1854, p. 182.
[3] The evidence in the record shows that Carrollton was originally the McCarthy plantation, owned by the New Orleans Canal & Banking Company, Samuel Cohn, Laurent Millaudon, and John Slidell; that Charles F. Zimpel, surveyor, made a plan of the McCarthy plantation, and laid it out for the owners as the town of Carrollton, subdividing it into lots, “squares,” etc., bounded by designated streets; that on the Zimpel plan the “square” in question bears no number, and is designated simply as “Frederick Square,” and that Hamilton (now Palmer) and Green squares were similarly designated and without lot numbers; that the subdivisions were 316 in number, most of which measured about 600 feet square, with two numbers to each subdivision; that these 316 ’subdivisions excluded the “squares”; that many lots and parts of lots were sold by the above-named owners and their vendees by reference to the Zimpel plan or map; that Frederick Square was not assessed for taxation ; that the tax research certificates show it to have been marked as the property of the city of New Orleans, and free from taxation; that defendant 'bought said Frederick Square, together with other property, in 1909, and that its vendors had acquired same from the heirs of John Slidell on December 7, 1894; and that the theirs of John Slidell had no ownership in Frederick Square when they sold it “as square No. 255 A, bounded by Fifteenth, Edinburg, Hamilton, and Laurel Grove streets.”
The statement of the evidence disposes of the case on the merits.
[4] In the case of City of Shreveport v. Frank C. Walpole, 22 La. Ann. 526, where the defendant was in possession of an “open space” belonging to the corporation of Shreveport for public uses, and wherein the defendant urged the same defenses as are now presented in this ease, we discuss and apply the law with great care; and we refer to our decision in that case as our reasons for judgment in this one.
The syllabus to that case reads:
“No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. _ Nor is any particular form necessary to the dedication of land to the public use. All that is required is the assent of the owner of the land, and the fact that it is being used for the purposes intended. 18 La. Ann. 560; 21 La. Ann. 244. A third party occupying lands that have been dedicated to the public use is without the capacity to acquire title thereto, because such lands are from the moment of the dedication out of commerce, and are not subject to individual or private ownership. 21 La. Ann. 244.”
[5, 6] Defendant objected to the offer in evidence of tracings from the plan or sketch of a—
“topographic map of New Orleans and its vicinity, embracing a distance of 12 miles up and 8% miles down the Mississippi river, and part of Lake Pontchartrain, representing all public improvements existing, etc., * * • compiled from actual survey and the best au *1097 thority by Charles F. Zimpel, deputy city surveyor of New Orleans, chief engineer of the New Orleans and Carrollton Railroad Company, * * * New Orleans, March, 1834. Copyright entered in the clerk’s office of the District Court of the United States for the Eastern District of Louisiana under date 4th September, 1833.”
This map embraces a map of Carrollton, or a copy of that map, by the same surveyor, Charles F. Zimpel, made in 1832. This map of New Orleans and its vicinity was not offered in evidence; but it has been brought' into court by consent of all parties, and it is now before us. The objection to the map and the tracings made therefrom were on the ground that there is no evidence going to show that the Zimpel map of 1832 was the official map of the town of Carrollton, and that the present Zimpel map is only a copy. That there was a map of the town of Carrollton by Charles F. Zimpel in 1832 is made clear by the recognition of that map by the Legislature in the act incorporating the town of Carrollton, No. 91 of 1845, and again in the charter of the New Orleans & Carrollton Railroad Company, Acts of 1833, p. 8. We had that map before us in April, 1854, in the case of Burthe v. Blake and Town of Carrollton, 9 La. Ann. 244, where we refer to—
“the original plan of Carrollton, drawn by Charles F. Zimpel, engineer and surveyor, dated the 16th day of March, 1832, deposited for reference in the office of E. R. Stringer, notary, in this city, and of whom Theodore Guyol is the successor in office.”
And:
“It is admitted [in this record] that all the. records of E. R. Stringer, notary public, together with the original Zimpel plan of Carroll-ton referred to in his acts as being annexed to his acts of 1833, are not extant; the same having been destroyed by fire many years ago.”
The Zimpel map of the city of New Orleans and its vicinity, containing a map of Carrollton, made by Charles F. Zimpel in 1834, he being the same person who made the map of the town of Carrollton in 1832, is therefore competent evidence for the purpose of showing that “Frederick Square” was dedicated to the public by the owners of the McCarthy plantation in 1832.
In addition to the Zimpel map, there was offered in evidence a “map of the Sixth district and Carrollton compiled from actual survey by the best authorities by William H. Williams, surveyor and civil engineer, in 1871.” The testimony shows Mr. Williams to have been the official surveyor of Carrollton for years. This map, like the Zimpel map, locates “Frederick Square” within the boundaries heretofore given, and without any number whatever on the lot of ground. Other maps of Carrollton show the same destination.
The evidence also shows that the owners of the McCarthy plantation, who had it laid out as the town of Carrollton, have never alienated the property known as “Frederick Square,” or any property within the boundaries of the square.
There is also the testimony of Edgar Pilie, surveyor, to the effect that he had, at the instance of the New Orleans Canal & Banking Company, one of the owners of the McCarthy plantation, made a thorough examination of all sales made by said company and the other original owners, and that all- the property that originally formed the town of Carrollton had been sold by them except “Frederick Square,” the “other two squares,” and some batture lots. He also testified that he was surveyor of 43 years’ continual practice in this city, and that “Frederick Square” is located in the same place and is so designated on all reliable maps made since the original Zimpel map was made; that he had never seen a map that did not designate “Frederick Square” as such, that designation being different from all privately owned squares.
In an act of sale in 1840 between Samuel Cohn and his co-owners of the McCarthy plantation of certain pieces of property in Carrollton, reference is made to the Zimpel *1099 plan, and the lots are sold with reference to it. And these co-owners therein mention that they had caused their plantation to be divided into 316 lots as shown on the Zimpel map, thus showing that they persisted in their dedication of the “three squares” to public use.
And we say with reference to this same Zimpel plan in 1854, in Burthe v. Blake and Town of Carrollton, 9 La. Ann. 244:
“The founders of this town, when they caused this plan of the McCarthy plantation to be made, dividing into squares or portions of land, numbered and bounded by streets and avenues, and offered it at auction to the public, clearly intended to give it the character and destination of suburban property. No one holding squares and pieces of ground described in his title with reference to this plan, which has been the subject of legislative recognition, can consistently with his own title, the manifest intention of his authors, and the rights of other citizens who have bought on the faith of the same declared intention and appropriation, dispute the public character of that portion of the land so reserved for streets and avenues (and we now add squares), whenever the corporation of Carrollton (now the city of New Orleans) shall consider the proper time has arrived for having them opened. The plaintiff must be considered as having bought this property with reference to this ultimate exercise of power, and is entirely unsupported in his pretension that by the sufferance of the municipal council that he should inclose the lands (or squares), while the public convenience did not require the opening of the dedicated streets (or squares), he could thereby acquire a right in the soil which he never purchased, and which on the contrary was excluded from his ownership, by the terms of his deed.”
See, also, McNeil et al. v. Hicks & Howell, 34 La. Ann. 1090; Sarpy v. Municipality, 9 La. Ann. 597, 61 Am. Dec. 221.
Defendant objected to all evidence on behalf of the plaintiff until plaintiff had shown dedication and acceptance by the proper authority of the plot of ground in question, which objection was properly overruled. The plaintiff was allowed to proceed to offer its evidence without interference by the court.
Plaintiff offered in evidence “an act of sale before Edgar Grima, notary public, on December 17, 1894,” being a quitclaim deed from the heirs of John Slidell and wife to Robert A. Hart. Defendant argues that this is a judicial admission of defendant’s author in title to the square in question. The offer was evidently made in support of the allegation in the petition that defendant was without title; and it has not the effect of admitting acquisition of title by the defendant’s author. Alfred Slidell and his coheirs never had title to this square.' And the act of sale or quitclaim deed referred to shows that they did not assert title to the property, for they sold—
“with no other warranty on the part of the vendors herein than that resulting from their acts and deeds, and without any recourse upon the vendors, in any case, even for the return of the purchase money. * * * The present deed being a quitclaim deed, the vendors only conveying title and interest as they have or may have in and to said properties.”
The parties to the act also dispensed with the certificates from the recorder of mortgages and the register of conveyances, as required by law. The act does not describe “Frederick Square” by name, but refers to it as “square No. 255 A, bounded by Fifteenth, Edinburg, Hamilton, and Laurel Grove streets,” and declares that the squares and lots in said act are — •
“designated and bounded as follows: In conformity with the plan made by Joseph Pilie, dated July 20, 1840, and deposited in the office of A. Mazureau, late a notary public in this city.”
This plan of Joseph Pilie was not offered in evidence, and it is not referred to by any of the witnesses who appeared on the trial of the case. There is no “square No. 255 A” on any of the recognized maps of the town of Carrollton. There is found on those maps lot 255, and it adjoins “Frederick Square.”
Alfred Slidell and his coheirs acquired their interest in the land which they sold from their father, John Slidell, by inheritance, and the record shows that John Slidell never acquired title to “Frederick Square.” John Slidell was one of the original owners of the McCarthy plantation which was laid out *1101 by Mm, together with his co-owners, as the town of Carrollton, and by whom “Frederick Square” was dedicated to public use, together with two other squares, which have always been used as public parks or squares. 1-Ie, by Public Act July 27, 1833, acquired the interest of his co-owners in 44 lots, among which was lot No. 255, “situate in Carrollton and designated on the plan thereof.” The reference therein to a plan was doubtless to that one made by Zimpel in 1832 for himself and his co-owners; and it was this lot, 255, which Ms heirs inherited from him, and which lot adjoins “Frederick Square” on said map. He did not buy lot No. 255 A, or B, but simply lots 255, 256, and 257.
Defendant also filed a plea of estoppel based upon an alleged acknowledgment by the town council of Carrollton that the square of ground which is the subject of controversy In this present suit had never been dedicated to public use by certain resolutions adopted by said council. These resolutions are filed in the record in support of the plea of estoppel, but they fail to support the allegation contained in said plea. On the contrary, it is quite clear that the council of Carroll-ton in 1861, November 27th, declared that “Green Square,” “Hamilton Square,” and “Frederick Square” had been dedicated to public use, but that “there is no record of the dedication,” and the council directed the mayor to obtain “a formal dedication of these squares.” The council was evidently of the opinion that there would have to be some formal act of dedication, and an acceptance by the town authorities, inasmuch as there were no town authorities in 1832 when these squares were originally dedicated to public use. The next resolution referred to is of November 3, 1869, wherein the council declare that the three squares of ground have always been considered public, and the council ordered the commissary to inclose Hamilton Square and Green Square and to de-' clare them open for public use, without ordering the commissary to do the same thing for Frederick Square. This cannot be held to be a declaration on the part of the council of abandonment of Frederick Square. The evidence shows it to be now located in a portion of the Seventh district of the city removed from residences, and that the time has not yet come when it should be prepared for the purposes designated by those who laid out the town of Carrollton.
[7] Defendant contends that, even if there were a dedication, plaintiff cannot recover in this suit because its action is petitory. It is sufficient to say that there is a prayer for general relief, and under such prayer the court may render such judgment as the allegations of the petition justify. Therefore the court may render judgment recognizing that the block was dedicated to the public for a park, and that the city of New Orleans, as the- representative of the public, is entitled to the care and custody of it for such purpose. Such a decree would certainly be responsive to the allegations of the petition. Town of Yinton v. Raymond C. Lyons et al., 131 La. 673, 60 South. 54.
The plea of prescription is overruled, and the judgment appealed from is affirmed.